Jimmie Ed HUGHES, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 12–05–00038–CR.

Court of Appeals of Texas, Tyler.

May 10, 2006.

William M. Curley, Appointed Atty., Palestine, for appellant.

David Cervantes, Dist. Atty., Robert A. McGlohon, Jr., Asst. Dist. Atty., Crockett, for state.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and BASS, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.

## OPINION

BILL BASS, Justice.

A jury convicted Appellant of one count of sexual assault and two counts of indecency with a child. The jury assessed Appellant's punishment at imprisonment for six years on the sexual assault count and imprisonment for two years, probated for ten years, on each of the two counts of indecency with a child. In his first issue, Appellant contends the evidence supporting his sexual assault conviction is legally insufficient. In his second issue, Appellant challenges the authority of the trial court to require, as a condition of probation, that he give public notice of his sex offender status by publishing it in a newspaper where he lives every three months and by

placing a sign at his front door stating that he is a convicted sex offender. We affirm.

## BACKGROUND

C.H. is the complainant, and Appellant is her father. C.H. was fifteen years of age when she reported her father's sexually abusive conduct. At trial she related a history of sexual abuse extending back to when she was four years old. Appellant denied his daughter's accusations of sexual abuse. The case had been previously tried, but this court reversed Appellant's conviction and remanded the cause to the trial court. The opinion in the first appeal of this case contains a complete statement of the facts. *See Hughes v. State*, 128 S.W.3d 247 (Tex.App.-Tyler 2003, pet. ref'd).

## LEGALLY INSUFFICIENT EVIDENCE

■ In his first issue, Appellant maintains there is no proof or legally insufficient proof of the complainant's lack of consent, a statutory element of the offense of sexual assault. Although C.H. was no more than fifteen years of age at the time of the offense, the State charged Appellant under Section 22.011(a)(1) of the Texas Penal Code rather than Section 22.011(a)(2), sexual assault of a child, which requires no proof of consent. *Compare* TEX. PEN.CODE ANN. § 22.011(a)(1) (Vernon Supp.2005) *with* TEX. PEN.CODE ANN. § 22.011(a)(2) (Vernon Supp.2005).

Appellant was charged with the sexual assault of C.H. in count three of the indictment, which alleges the following:

And the Grand Jurors aforesaid, upon their oaths aforesaid, do further present in and on to said Court that on or about the 15th of October, 2000, A.D., in said County and State, and anterior to the presentment of their indictment, Jimmie Ed Hughes, Jr., did then and there, intentionally or knowingly cause the

penetration of the female sexual organ of C.H. by Defendant's finger, without the consent of C.H.

*See id.* § 22.011(a)(1)(A).

Likewise, the application paragraph of the court's charge provides as follows:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 15th day of October, 2000, in Houston County, Texas, the defendant, Jimmie Ed Hughes, Jr., did then and there intentionally or knowingly cause the penetration of the female sexual organ of C.H. by defendant's finger, without the consent of C.H., then you will find the defendant guilty of Count Three—Sexual Assault, as charged in the indictment.

## Standard of Review

■ The standard of review of legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Whitaker v. State*, 977 S.W.2d 595, 598 (Tex.Crim.App.1998). The *Jackson* standard measures evidentiary sufficiency against the "substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16, 99 S.Ct. at 2792 n. 16; *Fuller v. State*, 73 S.W.3d 250, 252 (Tex.Crim.App.2002).

## Analysis

Lack of consent is a statutory element of sexual assault as charged in count three of the indictment. TEX. PEN.CODE ANN. § 22.011(a)(1). The statute enumerates when conduct is committed without the consent of the other person, stating as follows:

(1) the actor compels the other person to submit or participate by the use of physical force or violence;

(2) the actor compels the other person to submit or participate by threatening to use force or violence against the other person, and the other person believes that the actor has the present ability to execute the threat;

(3) the other person has not consented and the actor knows the other person is unconscious or physically unable to resist;

(4) the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or resisting it;

(5) the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring;

(6) the actor has intentionally impaired the other person's power to appraise or control the other person's conduct by administering any substance without the other person's knowledge;

(7) the actor compels the other person to submit or participate by threatening to use force or violence against any person, and the other person believes that the actor has the ability to execute the threat;

(8) the actor is a public servant who coerces the other person to submit or participate;

(9) the actor is a mental health services provider or a health care services provider who causes the other person, who is a patient or former patient of the actor, to submit or participate by exploiting the other person's emotional dependency on the actor;

(10) the actor is a clergyman who causes the other person to submit or participate by exploiting the other person's emotional dependency on the clergyman in the clergyman's professional character as spiritual adviser; or

(11) the actor is an employee of a facility where the other person is a resident, unless the employee and resident are formally or informally married to each other under Chapter 2, Family Code.

TEX. PEN.CODE ANN. § 22.011(b)(1–11) (Vernon Supp.2005).

C.H. testified that her father began molesting and assaulting her when she was three or four years old, "[a]nd I would be so scared and wanted to just hide."

> [C.H.] A. I would lay there trying to go to sleep, but it was constant thought of when is my door going to open, or when is someone going to come in. And so I tried to stay awake as long as possible so maybe whenever he would come in, I could make some kind of noise and wake up my mom. And then he would leave.
>
> . . . .
>
> [STATE] Q. So he would take your hand and put it on this [sic] erect penis?
>
> A. Yes, ma'am.
>
> Q. For you—and guide you to masturbate him?
>
> A. Yes, ma'am.
>
> Q. How often did that happen? Was that something that happened regularly?
>
> A. It was regularly. I used to try to snatch my hand back. And he would—
>
> Q. Would he ever rub him—rub his body against you when he was sexually aroused like that?
>
> A. Yes, ma'am.
>
> Q. Would your father say anything to you when he was doing these things to you?

A. Whenever I would get upset, whenever I would get upset, he would sit there and tell me to relax and that it was okay because I was his pretty little girl, that I loved my—(Witness crying.) I'm sorry.

In regard to the October 2000 sexual assault alleged in count three, C.H. testified, as follows:

Q. And will you describe what happened at that time?

A. I woke up to my father taking off my clothes in the middle of the night. And—

Q. Where was this?

A. I was in my bedroom.

Q. Okay. And this is at the same house that you told us about earlier that's—that was in Grapeland in Houston County?

A. Yes, ma'am.

Q. And what—what happened?

A. He started taking off my clothes, and I woke up to it. And he was feeling on my chest, then he was feeling on my genitals. And he was kissing on me. And—

THE COURT: Would you like to take a short break?

THE WITNESS: Yes, please, if you don't mind.

After a recess for lunch, C.H. continued her testimony.

Q. [You were] beginning to share with us what happened in October of 2000. So—

A. Yes, ma'am. I remember waking up to my father touching me and talking [sic] off my clothes. And I'm not sure what time it was. It was pretty late. He had been—he had taken off most of my clothes and was touching all over me and kissing on me and feeling my chest, my vagina area.

Her testimony concerning the indecency with a child charge alleged in count five of the indictment also demonstrates that Appellant often began to sexually assault C.H. while she slept.

Q. What happened when you woke up and you saw him beside you or—or kneeling over you and you could feel him touching you?

A. I tried to ignore it and make it seem like it actually wasn't there. (Witness crying.) Sorry. I woke up to my father feeling over my clothes at first. Then he lifted up my shirt, and he was feeling my chest. Then he started to do more. And whenever he went to take off my pants, I think he noticed that I had on a pad because I was on my period. So therefore, he stopped. He was just rubbing my chest and my stomach and my legs, and then he just left me alone.

Q. When you say your chest or do you mean your breasts?

A. Yes, ma'am.

Q. And he was touching your breasts under your clothes?

A. Yes, ma'am.

Q. Did—was this something that was consensual?

A. It happened on a regular basis. I—I didn't—I didn't consent to it. But I just tried to act like it wasn't happening.

From C.H.'s earliest recollection until she was fifteen, Appellant, who should have been her guardian and protector, taught her to satisfy his sexual whims, no matter how disgusting. And yet she managed to show her revulsion and aversion, her lack of consent, in a number of ways. She testified that in order to avoid his advances (1) she would keep her little sister in bed with her; (2) she would undress in the bathroom with the door locked to

keep Appellant from seeing her undress; (3) she tried to stay with friends and grandparents; (4) she would wear clothing in bed that was hard to remove; (5) she would try to snatch her hand away when she masturbated Appellant; (6) she would become upset and cry; and (7) she would avoid having to wake up Appellant so she would not be grabbed. On several occasions, Appellant began to sexually abuse or assault C.H. while she was asleep. One can infer from this that Appellant knew C.H. did not consent to his advances. The evidence shows that Appellant commenced the assault charged in count three while C.H. slept. When she awoke, Appellant had removed most of her clothes and was feeling her chest and vaginal area. From this testimony, the jury could reasonably infer that the assault was completed before C.H. was conscious or physically able to resist. The evidence is legally sufficient to show the October sexual assault was without C.H.'s consent. Appellant's first issue is overruled.

## NOTICE OF SEXUAL OFFENDER STATUS

■ In his second issue, Appellant contends that the trial court had no authority to require as a condition of Appellant's probation that Appellant publish notice of his sex offender status in the newspaper every three months and place a sign on his front door stating that he is a convicted sex offender. Appellant argues that Article 62.045 of the Texas Code of Criminal Procedure provides specific exclusive and mandatory direction on how the public is to be notified when sex offenders reside in their neighborhoods. *See* Act of June 19, 1999, 76th Leg., R.S., ch. 1557, 1999 Tex. Gen. Laws 5354, 5357–58 (current version at TEX.CODE CRIM. PROC. ANN. art. 62.056 (Vernon Pamph. Supp.2005)). Article 42.12 of the Code provides that the defendant, as a condition of probation, shall give notice of the offense for which he was placed on probation "in any manner required by the judge." TEX.CODE CRIM. PROC. ANN. art. 42.12 § 11(a)(23) (Vernon Pamph. Supp.2005). Appellant maintains that the specific provisions of Article 62.045 preempt the general provision for public notice contained in Article 42.12, Section 11(a)(23).

Article 62.03(c) of the Texas Code of Criminal Procedure provides that the trial court shall assess the risk level of a sex offender placed on probation and assign the offender a risk level of one (low), two (moderate), three (high) using a screening method developed by a risk assessment review committee established by the Department of Public Safety. Act of June 19, 1999, 76th Leg., R.S., ch. 1557, 1999 Tex. Gen. Laws 5354, 5355 (current version at TEX.CODE CRIM. PROC. ANN. art. 62.053 (Vernon Pamph. Supp.2005)). Using the screening tool developed by the risk assessment committee, Appellant was assigned a risk level of one (low) indicating that he poses a low danger to the community and will not likely engage in criminal sexual conduct. *See* Act of May 18, 2001, 77th Leg., R.S., ch. 177, 2001 Tex. Gen. Laws 357, *repealed by* Act of June 18, 2005, 79th Leg., R.S., ch. 1008, 2005 Tex. Gen. Laws 3385, 3397–98. Article 62.031(b) prohibits publication of the person's sex offender status by a law enforcement agency if the offender is assigned a risk level of one. Act of June 18, 2003, 78th Leg., R.S., ch. 347, 2003 Tex. Gen. Laws 1509, *repealed by* Act of June 18, 2005, 79th Leg., R.S., ch. 1008, 2005 Tex. Gen. Laws 3385, 3397. The trial court may override the risk level assigned only if it (1) believes the assessed risk level is not an accurate prediction of the risk the offender poses to the community and (2) documents the reason for the override in the offender's case file. Act of May 18, 2001, 77th Leg., R.S., ch. 177, 2001 Tex.

Gen. Laws 358, *repealed by* Act of June 18, 2005, 79th Leg., R.S., ch. 1008, 2005 Tex. Gen. Laws 3385, 3397–98. The trial court in the instant case made no findings documenting her reason for overriding Appellant's risk level.

 The State contends that Appellant failed to preserve error by not objecting in the trial court to the conditions of probation he now challenges on appeal. *See* TEX.R.APP. P. 33.1. In *Mendez v. State*, 138 S.W.3d 334, 342 (Tex.Crim.App. 2004), the court stated, "Except for complaints involving systemic (or absolute) requirements, or rights that are waivable only, which are not involved here, all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." The court of criminal appeals in *Marin v. State*, 851 S.W.2d 275, 278–79 (Tex.Crim.App.1993) identified three classes of "rights," each with distinct requirements for preservation of an appellant's complaint of their denial. A systemic or absolute requirement is a law that the trial court has a duty to follow even if the parties wish otherwise. *Id.* at 279. A party may complain on appeal that such a requirement was violated, even if the party failed to complain in the trial court. *Id.* A second category is the "waivable right" or a right that must be implemented unless expressly waived. *Id.* The third class is the "forfeitable right"; in this class are rights of litigants that are to be implemented on request. *Id.* Most litigants' rights fall into the latter category and are forfeited by a failure to exercise them. *Id.* at 278. The preservation of this kind of complaint requires a timely specific objection and a ruling by the trial court. *Id.* at 279; TEX.R.APP. P. 33.1(a). Noncompliance with Rule 33.1(a) results in forfeiture. The State contends, and we agree, that the "right" urged by Appellant

in this case is included in the latter category.

The appellant in *Speth v. State*, 965 S.W.2d 13 (Tex.App.-Houston [14th Dist.] 1998), *rev'd on other grounds*, 6 S.W.3d 530 (Tex.Crim.App.1999), did not object to the conditions of his probation at trial, but complained about them for the first time on direct appeal. The court of appeals rejected the State's contention that the appellant had failed to preserve his complaint by making a trial objection and held that the appellant could raise "a defect in his sentence" even though he had not objected to it at trial. *Id.* at 15. The court of appeals opinion was based on a line of cases holding that if a punishment is not authorized by law, that portion of the sentence imposing that punishment is void. *See, e.g., Hern v. State*, 892 S.W.2d 894, 896 (Tex.Crim.App.1994). However, on appeal to the court of criminal appeals, that court concluded that, although the grant of community supervision and its accompanying conditions are part of the judgment, they are not part of the sentence. *Speth v. State*, 6 S.W.3d 530, 532 (Tex.Crim.App.1999). The court of criminal appeals held that "an award of community supervision is not a right, but a contractual privilege, and the conditions thereof are terms of the contract entered into between the trial court and the defendant. Therefore, conditions not objected to are affirmatively accepted as terms of the contract." *Id.* at 534. The court concluded that, assuming the probationer knew what the conditions were in time to object at trial, "[a] defendant who benefits from the contractual privilege of probation, the granting of which does not involve a systemic right or prohibition, must complain at trial to conditions he finds objectionable." *Id.*

In the recent case of *Kesaria v. State*, PD–1803, PD–1804, 189 S.W.3d 279, 281–

82 (Tex.Crim.App. 2006), the court of criminal appeals cited *Speth* and reiterated the necessity of an objection in order to preserve a complaint regarding conditions of probation. The court, however, determined that the record indicated the probationer had not had an opportunity to object and reviewed the appellant's complaint. *Id.,* at 281.

The record in the instant case shows that Appellant had the opportunity to object in the trial court, but failed to do so. No error is preserved. Therefore, we do not address Appellant's argument that the specific provisions of Article 62.045 regarding notice of a probationer's sexual offender status preempt the general provisions set out in Article 42.12, Section 11(a)(23). Appellant's second issue is overruled.

### *DISPOSITION*

The judgment of the trial court is *affirmed.*