

**NUMBER 13-10-00655-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**MICHAEL LEWIS,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

**On appeal from the 148th District Court
of Nueces County, Texas.**

---

**MEMORANDUM OPINION**

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Chief Justice Valdez**

Appellant, Michael Lewis, was convicted of two counts of sexual assault. *See* TEX. PENAL CODE ANN. § 22.011(a)(1) (West Supp. 2010). The trial court sentenced Lewis to twenty-five years' confinement for each count, with the sentences to run concurrently. By four issues, Lewis contends: (1) the evidence is insufficient; (2) the trial court erroneously excluded evidence; (3) the trial court "erred by accepting the testimony of an incompetent witness and by not ordering a competency evaluation"; and

(4) trial counsel was ineffective for failing to challenge the witness's competency. We affirm.

## I.    BACKGROUND

K.P. testified that her boyfriend, Jon Estes, asked her to allow Lewis to stay at her home. Lewis moved into her home "around July of 2009."[1] According to K.P., Lewis slept in the bedroom with her son, J.S., and she slept in the living room. K.P. stated that on August 5, 2009, Lewis "raped" her in her room.[2] According to K.P, she went to sleep at about 4:30 a.m. When she awoke, she "[felt] a shoulder move across [her]" and Lewis told her to be quiet. K.P. explained what happened next as follows:

> He tried to penetrate me. And it—it wasn't working quite right, so he got up—he (pause)—he—he flipped over, and he managed to get it hard enough to penetrate me both in the vag—vaginal canal and—and my anus and he had me (crying) suck on his penis.
>
> . . . .
>
> When he was almost done, he told me if I told anybody that [Estes] would not come out [of prison] alive.
>
> . . . .
>
> Because he knows more people in the jail than what [Estes] knows. And he felt that he could take care of him.

After the alleged attack, K.P. testified that she "got a hold" of a doll and started rocking with it. K.P. stated that her son entered the room and asked what had happened; however, K.P. told him that Lewis merely wanted to borrow some money. K.P. claimed she did not want to tell her son the truth because "that could get [her] in trouble."

---

[1] Estes was incarcerated at the time and did not reside with K.P.

[2] It appears from the record that K.P. considered the living room to be her bedroom.

2

K.P. stated that she told her son what had happened on August 12 because she was "falling apart" and her son wanted to know why. On August 13, K.P. reported the alleged attack to police. K.P. testified that the police collected sheets from her home. At trial, the State asked K.P. if she had allowed Lewis to perform the alleged sexual acts occurring on the night of August 5, and K.P. replied, "No, ma'am."

On cross-examination, K.P. stated that she had been diagnosed with multiple personality disorder in 1989 when she sought medical treatment because she "had lost two or three days and didn't know what had happened during those days." Lewis's trial counsel asked K.P. if she still suffered from the disorder; K.P. replied, "Every now and then, but not often. And when I do, I do lose the entire day. I don't remember anything that happened that day." K.P. stated that the last time this occurred was in 2008, and that she had these "blackouts" approximately once a year since 1989. Lewis's trial counsel asked K.P. if it was possible that she suffered a blackout on the day of the alleged attack; K.P. responded, "No, sir. Because, when I have a blackout, I don't remember what happened. When I do—when I'm there, I am there. It is still me. When I remember everything that happened that day it is me." When asked if any of the other personalities were present on the day of the incident, K.P. stated, "No, sir." K.P. testified that she does not recall what her other personalities experience or do and must be told what has happened when these personalities are present.

According to K.P., she did not receive treatment for her disorder between 1989 and 2008 because she "was able to hold everything together. [She] was able to work, do everything [she] needed to do." K.P. did not take any medications during that time. K.P. stated that she does not hear voices or see visions. When asked why she may

3

have driven Lewis to see his parole officer after the alleged sexual assault occurred, K.P. said, "To get him the fuck out of my house. (Pause) I can't stand being hurt. I can't stand knowing what he did when he took advantage of me and he took advantage of my entire family. (Pause) And the sooner I could get him out the better it was."

K.P. explained that a personality named "Cindy," who is seventeen-years-old, lives "inside" her. Cindy wrote a letter to Estes while he was in prison; however, K.P. did not read the letter and did not know the contents of the letter. K.P. claimed that she is not personally familiar with Cindy and that other people have told her about Cindy. K.P. stated, "Cindy never talks to me. Cindy does not talk. I don't know—from her, I don't know. . . ." K.P. did not know whether Cindy was currently "inside" her.

K.P. testified that she had seen dolls moving around her house and that she had video recorded the dolls moving. K.P. claimed that she "had locked the dolls in the hall closet, and they had come out and they were down at the foot of [her] bed." K.P. told Lewis "not to get spooked if those dolls move . . . ." K.P. stated that she sent the dolls and the video to her sister.

On re-direct examination, the State asked, "[K.P.,] is there any doubt in your mind that [Lewis] raped you on August 5, 2009," K.P. responded, "None at all." K.P. testified that she remembered the incident well and that it lasted about fifteen minutes. K.P. stated that she was positive that she did not have a blackout on August 5. K.P. claimed that she remembered that, during the incident, Lewis told her to keep quiet, to participate in the sexual act, and that if she told anyone, Estes would not make it out of prison alive. When the State asked if one of her other personalities may have consented to have sex with Lewis, K.P. stated, "No, ma'am."

4

John Prebul, a crime scene investigator with the Corpus Christi Police Department, testified that he collected bedding including a mattress cover, a fitted and flat sheet, two pillow cases, and a pillow sham. Prebul stated that the sheets were located in the living area where a bed was located. The trial court then admitted State's exhibit 5—a DNA report—into evidence. The DNA report stated that semen had been detected on a sheet and that the sperm cell fraction was consistent with the DNA profile of Lewis.[3]

After hearing the evidence, the trial court found Lewis guilty of two counts of sexual assault and sentenced him to twenty-five years' confinement. This appeal followed.

## II.   SUFFICIENCY OF THE EVIDENCE

By his first issue, Lewis contends that the evidence is insufficient to support the judgment. Specifically, Lewis argues that the evidence is insufficient to establish that he used his penis to penetrate K.P.'s anus or that he knew K.P. had not consented to the sexual acts.

### A.   Standard of Review and Applicable Law

In a sufficiency review, we examine the evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010). The fact-finder is the exclusive judge of the facts, the credibility of witnesses and of the

---

[3] The report indicated that the chances that "an unrelated person at random who could be the source of this DNA profile is approximately 1 in 4.281 sextillion for Caucasians, 1 in 100.1 quintillion for Blacks, and 1 in 4.044 sextillion for Hispanics." It also noted that "[t]o a reasonable degree of scientific certainty, Michael Lewis is the source of the profile (excluding identical twins)."

5

weight to be given testimony. *Brooks*, 323 S.W.3d at 899. We must resolve any evidentiary inconsistencies in favor of the judgment. *Id.*

We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 314 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Under a hypothetically correct jury charge, Lewis was guilty if he: (1) intentionally or knowingly; (2) caused the penetration of the sexual organ and anus of K.P. by any means; (3) without her consent. *See* Tex. Penal Code Ann. § 21.011(a)(1)(A).

## B.    Discussion

In this case, K.P. testified that Lewis "raped" her, that he penetrated her vagina and anus with his penis, and that she did not agree to have sex with him. K.P.'s testimony supports Lewis's conviction. *See Briseno v. State*, 293 S.W.3d 644, 646 (Tex. App.—San Antonio 2009, no pet.) ("The 'complainant's testimony alone is sufficient to support' a conviction.") (quoting *Tinker v. State*, 148 S.W.3d 666, 669 (Tex. App.—Houston [14th Dist.] 2004, no pet.)). However, Lewis argues that the evidence is insufficient to show that he knowingly caused the penetration without K.P.'s consent because she did not resist and she did not inform him of her lack of consent. K.P. stated that when she awoke, Lewis was already on top of her; thus, the evidence supports a finding that Lewis began the sexual assault while she slept. *See Hughes v. State*, 194 S.W.3d 649, 654 (Tex. App.—Tyler 2006, no pet.) (concluding that jury could infer that the appellant knew that he did not have the victim's consent because he began the sexual assault while she slept). Furthermore, Lewis told K.P. to be quiet, and

6

he threatened to have Estes killed if she told anyone what had happened. From this evidence, the fact-finder could have reasonably inferred that Lewis was aware that K.P. had not consented to the sexual acts. *See Elliott v. State*, 858 S.W.2d 478, 485 (Tex. Crim. App. 1993) (stating that appellant's threat that he would kill the victim if she called police "could reasonably be construed as demonstrating a consciousness of guilt"); *Sharpe v. State*, 881 S.W.2d 487, 489 (Tex. App.—El Paso 1994, no pet.) ("Appellant's intent to commit sexual assault can be inferred from his remarks and the circumstances surrounding his acts."); *see also Hughes*, 194 S.W.3d at 654.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational fact-finder could have found beyond a reasonable doubt that Lewis penetrated K.P.'s anus and vagina without her consent. *See Jackson*, 443 U.S. at 319; *see also Brooks*, 323 S.W.3d at 898–99. Therefore, we conclude that the evidence was sufficient to support Lewis's conviction. We overrule his first issue.

### III. EXCLUSION OF EVIDENCE

By his second issue, Lewis contends that the trial court abused its discretion by excluding evidence. Specifically, Lewis complains by three sub-issues that the trial court should have allowed K.P. to testify about statements made by other people regarding her different personalities, her possible motivation for making her accusation, and the contents of a letter she wrote to Estes. Lewis further argues that the trial court's exclusion of this evidence constituted cumulative error requiring reversal and remand.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2011); *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996); *Montgomery v. State*,

7

810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990) (en banc). We may not reverse the judgment if the trial court's decision is within the zone of reasonable disagreement. *Martinez*, 327 S.W.3d at 736; *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *Green*, 934 S.W.2d at 102; *Montgomery*, 810 S.W.2d at 391.

By his first sub-issue, Lewis complains that K.P.'s testimony regarding statements made by others to her about her actions while her different personalities were present should have been admitted as a present sense impression. The State counters that Lewis has not preserved error.

Lewis's trial counsel asked K.P. to describe what happens when her different personalities are present. K.P. stated that it was difficult to explain because she is "not really with them when [the personalities] do it," and "the only way [she finds] out what happens is when somebody tells [her]." The State objected, arguing that anything somebody else told K.P. concerning her other personalities would be hearsay. The trial court asked trial counsel if other witnesses would testify about the activities of K.P.'s different personalities, and trial counsel stated, "I will have her son and her nephew testify." The trial court then sustained the State's objection and told defense counsel he could ask those witnesses directly. Lewis's trial counsel agreed.

Lewis does not dispute on appeal that the testimony he attempted to elicit was hearsay and argues instead that it was admissible under the present sense exception to the hearsay rule. However, Lewis did not present this legal argument to the trial court. Accordingly, we may not reverse the trial court's decision on that theory. *State v. Bailey*, 201 S.W.3d 739, 743 (Tex. Crim. App. 2006) ("[I]t violates 'ordinary notions of procedural default' for a court of appeals to reverse a trial court's decision on a legal

8

theory that the complaining party did not present to the trial court.") (quoting *Hailey v. State*, 87 S.W.3d 118, 122 (Tex. Crim. App. 2002)). We overrule Lewis's first sub-issue.

Next, Lewis complains that the trial court excluded evidence regarding K.P.'s anger toward him before the day the sexual assault occurred. Lewis argues that K.P.'s animosity toward him was "clearly relevant to the State's case in chief and defensive theories and should have been admitted into evidence." When Lewis's trial counsel asked K.P. if she had "anger from something else that happened in [her] life before [the day the sexual assault occurred]," the State objected on relevancy grounds. Lewis's defense counsel argued that the evidence was relevant because "this goes into the motivation behind—behind this accusation." Trial counsel did not make an offer of proof or provide a specific summary of the evidence he wanted to elicit. The trial court sustained the State's objection. Later, Lewis was allowed to question K.P. about her anger when he borrowed $20 from her neighbor.

> In order to preserve error regarding a trial court's decision to exclude evidence, the complaining party must comply with Rule of Evidence 103 by making an "offer of proof" which sets forth the substance of the proffered evidence. Rule 103(a)(2) provides: "Error may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked." The offer of proof may consist of a concise statement by counsel, or it may be in question-and-answer form. If in the form of a statement, the proffer "must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible."

*Mays v. State*, 285 S.W.3d 884, 889–90 (Tex. Crim. App. 2009) (internal citations omitted).

9

Here, Lewis was required to proffer, with some degree of specificity, the substantive evidence he intended to present concerning K.P.'s anger and why it was relevant to his defense. *See id.* This he failed to do. Therefore, Lewis has not preserved this argument for our review. *See id.* We overrule Lewis's second sub-issue.

By his third sub-issue, Lewis complains that the trial court improperly excluded K.P.'s testimony regarding a letter she wrote to Estes while he was in prison. Again, Lewis did not make an offer of proof regarding the contents of the letter and its relevance; thus, he has not preserved this issue. *See id.* ("The primary purpose of an offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful. A secondary purpose is to permit the trial judge to reconsider his ruling in light of the actual evidence."). We overrule Lewis's third sub-issue.

Finally, Lewis argues that due to cumulative error, we must reverse his conviction. However, we find that there is no cumulative error. Therefore, we conclude that the trial court did not abuse its discretion by excluding the complained-of evidence. We overrule Lewis's second issue.

## IV.   WITNESS COMPETENCY

By his third issue, Lewis contends that the "trial court erred by accepting the testimony of an incompetent witness and by not ordering a competency evaluation." The State responds that Lewis has failed to preserve error because he did not ask the trial court to inquire into K.P.'s competency.

Whether a mentally ill person testifies is within the discretion of the trial court and its ruling will only be reversed upon a showing that it abused its discretion. *Broussard v. State*, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995). It is presumed that every person is

10

competent to testify. *See* TEX. R. EVID. 601(a). No authority requires or empowers a trial court to force a witness to undergo a psychiatric evaluation for the purpose of a competency determination. *Broussard*, 910 S.W.2d at 960. Moreover, the trial court has no duty to conduct a preliminary competency examination on its own motion. *McGinn v. State*, 961 S.W.2d 161, 165 (Tex. Crim. App. 1998).

To be competent to testify, a witness must "possess sufficient intellect to relate transactions with respect to which they are interrogated." *Watson v. State*, 596 S.W.2d 867, 870–71 (Tex. Crim. App. 1980). In determining whether a witness is competent to testify, the trial court should consider whether the witness has the competence to observe intelligently the events in question at the time of their occurrence, the capacity to recollect the events, and the capacity to narrate them. *Lewis v. State*, 126 S.W.3d 572, 576 (Tex. App.—Texarkana 2004, pet. ref'd) (citing *Watson*, 596 S.W.2d at 870–71).

To preserve error regarding a witness's alleged incompetence, the defendant must either request that the trial court conduct an examination of the alleged incompetent witness or object to her competency to testify. *Fox v. State*, 175 S.W.3d 475, 481 (Tex. App.—Texarkana 2005, pet. ref'd); *Rich v. State*, 823 S.W.2d 420, 421 (Tex. App.—Fort Worth 1992, pet. ref'd); *Grayson v. State*, 786 S.W.2d 504, 505 (Tex. App.—Dallas 1990, no pet.) (citing *Cisneros v. State*, 692 S.W.2d 78, 82 (Tex. Crim. App. 1979)). Having failed to request such a hearing or object to K.P.'s testimony, Lewis has failed to preserve his complaint regarding K.P.'s competence. *See Fox*, 175 S.W.3d at 481; *Rich*, 823 S.W.2d at 421; *Grayson*, 786 S.W.2d at 505.

11

Nonetheless, we note that K.P.'s testimony provides sufficient evidence to support a finding that K.P. was competent to testify. K.P. testified that she had not suffered any blackouts since 2008, she does not hear voices or have visions, she was able to work and maintain a household, she remembered the details of the sexual assault, she had not suffered a blackout on the day of the sexual assault, and none of her other personalities were present on that day. K.P.'s testimony shows that she had the ability to understand questions and frame intelligent answers, as well as to recollect the details of the sexual assault and communicate that recollection. Although K.P. undoubtedly suffered from a mental disability, she had the competence to observe intelligently the events in question at the time of their occurrence, the capacity to recollect the events, and the capacity to recount them in a narrative format. *See Lewis*, 126 S.W.3d at 576. Therefore, there was evidence in the record upon which the trial court could have reasonably found that K.P. was competent to testify, and there was no reason for the trial court to reject K.P.'s testimony. *See Watson*, 596 S.W.2d at 870–71 (concluding that there is no reason for a trial court to reject the testimony of a witness who has a mental disability if that witness is able to recollect and communicate her recollection by any means); *Fox*, 175 S.W.3d at 481 (finding that the trial court did not abuse its discretion by not sua sponte conducting a competency hearing after a mentally disabled witness claimed that dolls had been sent to chase her and had told her to kill other people because she answered all the questions coherently, with intelligence and understanding); *see also Kennedy v. State*, No. 2-08-066-CR, 2009 Tex. App. LEXIS 3583, *5–7 (Tex. App.—Fort Worth May 21, 2009, no pet.) (mem. op., not designated for publication) (concluding that, although witness had bipolar disorder,

12

took eight prescription medications to treat the disorder, had been institutionalized several times, had attempted suicide on multiple occasions, and stated that she traveled to California but could not explain why, the trial court could have reasonably found her to be competent); *Castro v. State*, No. 03-98-00570-CR, 1999 Tex. App. LEXIS 8592, at *17–20 (Tex. App.—Austin Nov. 18, 1999, pet. ref'd) (mem. op., not designated for publication) (finding that the trial court did not abuse its discretion by finding witness competent to testify despite that while in the courtroom the witness chattered nonsensically, claimed to be Elvis, and claimed that the State had performed a brain scan on him). We overrule Lewis's third issue.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

By his fourth issue, Lewis contends that his trial counsel was ineffective for failing to challenge K.P.'s competency.

## A. Standard of Review and Applicable Law

Ineffective assistance of counsel claims are evaluated under the two-part test articulated by the United States Supreme Court in *Strickland v. Washington*. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The *Strickland* test requires the appellant to show that counsel's performance was deficient, or in other words, that counsel's assistance fell below an objective standard of reasonableness. *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 687. The appellant must then show that there is a reasonable probability that, but for counsel's errors, the result would have been different. *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 694. In determining the validity of appellant's claim of

13

ineffective assistance of counsel, "any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight." *Thompson*, 9 S.W.3d at 813.

The burden is on appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *Id.* Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689; *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.). A reviewing court will not second-guess legitimate tactical decisions made by trial counsel. *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate . . . ."). Counsel's effectiveness is judged by the totality of the representation, not by isolated acts or omissions. *Thompson*, 9 S.W.3d at 813; *Jaynes*, 216 S.W.3d at 851. An allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 814 (setting out that "in the vast majority of cases, the undeveloped record on direct appeal will be insufficient for an appellant to satisfy the dual prongs of *Strickland*"); *see Jackson v. State*, 877 S.W.2d 768, 771–72 (Tex. Crim. App. 1994) (en banc) (stating that "we must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he made all significant decisions in the exercise of reasonable professional judgment" and that "[d]ue to the lack of evidence in

14

the record concerning trial counsel's reasons" for the alleged ineffectiveness, the court was "unable to conclude that appellant's trial counsel's performance was deficient") (internal quotations omitted).

## B.    Discussion

The record is silent regarding Lewis's trial counsel's reason for not requesting a competency hearing. Therefore, Lewis has failed to overcome the strong presumption that trial counsel rendered effective assistance. *See Ex parte Martinez*, 330 S.W.3d at 901; *Bone*, 77 S.W.3d at 835; *Thompson*, 9 S.W.3d at 814; *see also Jackson*, 877 S.W.2d at 771-72. Furthermore, because we have concluded that there was no reason to reject K.P.'s testimony, Lewis has not shown that he was prejudiced by trial counsel's alleged error. *See Ex parte Martinez*, 330 S.W.3d at 901 ("To successfully assert that trial counsel's failure to object amounted to ineffective assistance, the applicant must show that the trial judge would have committed error in overruling such an objection."); *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996) ("[I]n order to argue successfully that her trial counsel's failure to object to the State's questioning and argument amounted to ineffective assistance, appellant must show that the trial judge would have committed error in overruling such an objection."). Accordingly, we overrule Lewis's fourth issue.

### VI.    CONCLUSION

We affirm the trial court's judgment.

_____
ROGELIO VALDEZ
Chief Justice

Do not Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
5th day of January, 2012.

15