# NO. 12-21-00158-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *STEVEN CHARLES HILL,*<br>*APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Steven Charles Hill appeals his conviction for the offense of aggravated sexual assault of an elderly person. He raises four issues on appeal. We modify the trial court's judgment, and affirm as modified.

### BACKGROUND

Appellant and the victim resided in the home of Appellant's brother, who is married to the victim's daughter. Many extended members of both families resided at the home for several years. At the time of the alleged sexual assault, the victim was an eighty-year-old blind woman. On December 26, 2019, at approximately 3:00 a.m., she asked Appellant, who slept in the living room at the time, to assist her with opening her window. Appellant then laid down on the victim's bed behind her. The victim had taken medication that she later explained made her "out of it."

The victim's great-granddaughter, who was fifteen years old at the time, walked by the room and observed Appellant on the victim's bed behind her, which she thought was very unusual. Alarmed by her observation, she told her mother, who several hours later then called Shanna Hawkins, a longtime family friend. After Hawkins arrived, the victim, who was notably

shaken and upset, disclosed that Appellant had sexual intercourse with her. Hawkins notified the authorities, who went to the home to investigate.

Appellant, who was also home at the time, voluntarily went to the police station and gave a video recorded statement. Appellant initially denied having any sexual contact or relationship with the victim. After Tyler Police Department Detective Kenneth Gardner told Appellant about the possibility that they would retrieve DNA evidence, Appellant admitted that he had sexual intercourse with the victim, but claimed it was consensual.

Meanwhile, emergency medical personnel took the victim to the hospital for a sexual assault nurse examination (SANE). SANE Nurse Brittany Pace conducted the exam, and the DNA profile obtained from sperm cells found on her vaginal swabs was consistent with that of Appellant.

Appellant was ultimately arrested and charged by indictment with aggravated sexual assault of an elderly person. Appellant pleaded "not guilty" to the offense and the matter proceeded to a jury trial. The jury found Appellant guilty of the offense. Appellant elected that the trial court assess his punishment, and after a punishment hearing, the trial court assessed Appellant's sentence at life imprisonment. The judgment, bill of costs, and Order to Withdraw Funds show that Appellant was assessed $501.50 in court costs. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant contends that the evidence is insufficient to support the jury's finding of guilt, namely on the issue of whether the victim consented to sexual intercourse with him.

### Standard of Review

The ***Jackson v. Virginia*** legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. ***Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *see **Jackson v. Virginia***, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789; *see also **Johnson v. State***, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

2

We examine the evidence in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. The jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899; *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). We give full deference to the factfinder's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). If the record contains conflicting inferences, we must presume that the factfinder resolved such facts in favor of the verdict and defer to that resolution. *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Circumstantial evidence is as probative as direct evidence in establishing the accused's guilt. *Hooper*, 214 S.W.3d at 13. Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See id.* Juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. *Id.* at 15. Juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions. *Id.* An inference is a conclusion reached by considering other facts and deducing a logical consequence from them, while speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Id.* at 16.

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

**Applicable Law**

In relevant part, a person commits the offense of aggravated sexual assault of an elderly person if the person intentionally or knowingly causes the penetration of the anus or sexual organ of an elderly or disabled individual by any means without that person's consent. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(i), (a)(2)(C) (West 2019). An aggravated sexual assault is without the consent of the other person if it occurs under the circumstances listed in Texas Penal Code

Section 22.011(b), including that, "the other person has not consented and the actor knows the other person is unconscious or physically unable to resist," or "the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring." *Id*. §§ 22.011(b)(3),(5), 22.021(c) (West Supp. 2021). "[T]he fact that the complainant did not remember the sexual assault is not dispositive of the issue of consent." *Wilson v. State*, 473 S.W.3d 889, 898 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). "[W]here assent in fact has not been given, and the actor knows that the victim's physical impairment is such that resistance is not reasonably to be expected, sexual intercourse is 'without consent' under the sexual assault statute." *Elliott v. State*, 858 S.W.2d 478, 485 (Tex. Crim. App. 1993). The victim's testimony that she did not consent to engaging in sexual intercourse with the defendant is sufficient to establish a lack of consent. *Wilson*, 473 S.W.3d at 899.

**Discussion**

Appellant argues that he and the victim had an ongoing relationship and that she consented to sexual intercourse with Appellant at the time of the alleged sexual assault. He points to evidence that they resided in the same home, they knew each other for years, Appellant earlier stayed on a cot in her bedroom for a period of time, and the victim called him into her bedroom to help her with the window on the evening in question. He also points to testimony that the victim did not appear injured or in need of medical assistance, no one in the home feared him, and the victim did not ask to call police. Accordingly, his argument continues, the record does not support a rational inference that any sexual acts were without the victim's consent. We disagree.

Although the victim could not remember the precise details of the sexual assault at the time of trial, she testified that she did not believe she wanted to have sex with Appellant:

> Q. Okay. If [Appellant] had sex with you on December 26th, would that have been something you would have wanted or not wanted?
> A. (Shakes head negatively). I don't think I wanted it.
> Q. Okay. So, you didn't –
> A. I don't remember.
> Q. There – there's stuff you don't remember; is that right?
> A. Uh-huh (Affirmative).
> Q. But you don't think you would have wanted it; is that right?
> A. No. Wouldn't think so.

4

Hawkins testified that, because the victim was crying and visibly upset when talking to her about what had happened later that morning, she did not believe that the victim consented to sex with Appellant. Hawkins testified that the victim told her Appellant was "messing with me," and when asked to clarify, she told Hawkins that he "took my underwear off and he put his thing in me." Hawkins also explained that the victim initially did not want to report the offense because she was afraid the authorities would put her in a nursing home. The victim told Tyler Police Department Officer Chris Turner that Appellant got behind her and made motions of "hips thrusting, motions of sexual activity." She told him that Appellant penetrated her, that she was wet afterwards "in the area where babies come out," and that afterwards she used a pair of panties to wipe and clean off the fluid. Officer Turner opined that although several hours passed between the encounter and his interview of the victim, she was nervous, anxious, and upset, and she did not appear to be the kind of person who would be able to give effective consent.

Appellant knew the victim for many years and knew that she was blind and would often need the assistance of others in the house. Although Appellant previously had a cot in the victim's room "for a while," the victim denied ever having a sexual relationship with Appellant or that she wanted sex from anyone at the time of the assault:

> Q. You don't remember having sexual relations with [Appellant]?
> A.(Shakes head negatively.) Ooh, Lord, no. I'm too old. I don't need no sex. Don't want none.
> And then – I ain't looking for none.
> Q. And you're depending upon whatever [the others residents in the home] told you, right?
> A. No, not exactly.
> Q. Not exactly?
> A. Huh-uh (Negative).
> Q. Okay. Exactly – do you remember?
> A. We never had relations together – all – if we did, I don't remember.

Furthermore, Nurse Pace testified that, during the SANE exam, the victim told her Appellant began having sexual intercourse with her as she slept:

> She said, "I asked him to raise my window up, and I thought" – and then, she trailed off. [The victim continued,] "I turned on over and went back to sleep. And when I woke up, that was happening." And at that point, I said, "What was happening?" And she said, "He had his penis in my vagina. His name is Steven Hill."

The victim testified that she fell asleep after asking Appellant to raise the window because she had taken her medicine and was "out of it." *See **Elliott**,* 858 S.W.2d at 485

(evidence complainant unconscious due to voluntary intoxication sufficient to prove lack of consent). From this testimony, the jury could infer that Appellant knew he did not have her consent. *See Hughes v. State*, 194 S.W.3d 649, 654 (Tex. App.—Tyler 2006, no pet.). Moreover, the jury could have inferred Appellant's guilt from his initial denial to Detective Gardner of having sex with the victim before admitting to the act and claiming it was consensual. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) ("Attempts to conceal incriminating evidence, inconsistent statements, and implausible explanations to the police are probative of wrongful conduct and are also circumstances of guilt."); *Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.) ("A 'consciousness of guilt' is perhaps one of the strongest kinds of evidence of guilt. It is consequently a well-accepted principle that any conduct on the part of a person accused of a crime subsequent to its commission, which indicates a 'consciousness of guilt' may be received as a circumstance tending to prove that he committed the act with which he is charged.").

From the evidence described above, a rational jury could have inferred that the victim did not consent and Appellant knew she was unconscious or unable to resist, or alternatively, that the victim had not consented and was unaware that the sexual assault was occurring. *See* Tex. Penal Code Ann. §§ 22.011(b)(3),(5), 22.021(c). Accordingly, the evidence showing the victim's lack of consent was sufficient to support the jury's verdict of guilt. *See Elliott*, 858 S.W.2d at 485; *Wilson*, 473 S.W.3d at 899.

Appellant's first issue is overruled.

### DUE PROCESS

In issue two, Appellant argues that he was denied due process of law, as well as due course of law under the Texas Constitution, when the trial court considered evidence outside the record in assessing his sentence, namely the presentence investigation report (PSI), which had not been admitted into evidence.

**Standard of Review and Applicable Law**

Due process requires trial judges to be neutral and detached hearing officers in assessing punishment. *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973), 93 S. Ct. 1756, 1761-62, 36 L. Ed. 2d 656 (1973); *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). A trial judge has wide discretion in determining punishment; however, the trial judge must remain impartial.

***Grado v. State***, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014). Absent a clear showing to the contrary, we presume that the trial court was neutral and detached. ***Jaenicke v. State***, 109 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

**Discussion**

Appellant argues that the trial court considered the contents of the PSI although the PSI was not admitted into evidence. As part of this argument, Appellant also contends that the trial court erroneously considered his criminal convictions that were not admitted into evidence. At the beginning of the sentencing hearing, the trial court noted on the record that it ordered a PSI, reset the punishment phase of the case, and that it had received the PSI. The trial court asked Appellant whether he had received and reviewed the PSI with counsel, to which he replied, "Yes, sir." Counsel confirmed with the trial court that he had received the report and had adequate time to review it with Appellant. The trial court also took judicial notice of the PSI.

The record does not reflect that Appellant objected to the trial court taking judicial notice of the PSI. As a prerequisite to presenting a complaint for appellate review, the record must demonstrate that the complaint was made to the trial court by a timely objection that stated the grounds for the requested ruling with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a)(1)(A). The rule requiring preservation applies to all appellate complaints, whether constitutional, statutory, or otherwise, with the exception of rights involving systemic requirements or rights that are non-forfeitable. *See **Mendez v. State***, 138 S.W.3d 334, 340-41 (Tex. Crim. App. 2004). Appellant does not cite to any authority indicating that he was not required to preserve his complaints regarding the rights he contends were violated.

Even if Appellant had properly preserved error regarding his complaints, the trial court is specifically authorized by statute to consider a PSI in assessing punishment. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(d) (West Supp. 2021). The PSI must include the "criminal and social history of the defendant." *See **id.*** art. 42A.253(a)(3) (West 2018). The Texas Code of Criminal Procedure limits the disclosure of a PSI's contents. ***Id.*** art. 42A.254 (West 2018) (providing that "The judge may not inspect a presentence report and the contents of the report may not be disclosed to any person unless: (1) the defendant pleads guilty or nolo contendere or is convicted of the offense; or (2) the defendant, in writing, authorizes the judge to inspect the report."). Because access to the information in a PSI is restricted by statute, "the better practice is to not admit the PSI into evidence. Such practice . . . should not restrict the parties' access to that

information or the judge's consideration of that information in assessing punishment." ***Bell v. State***, 155 S.W.3d 635, 639 n.3 (Tex. App.—Texarkana 2005, no pet.). Accordingly, the trial court properly took judicial notice of the contents of the PSI, including evidence of Appellant's criminal history, and considered the PSI in assessing his punishment.

Appellant's second issue is overruled.


## CRUEL AND UNUSUAL PUNISHMENT

Appellant contends in his third issue his sentence of life imprisonment is grossly disproportionate and constitutes cruel and unusual punishment.

However, as Appellant concedes in his brief, he made no timely objection to the trial court raising the issue of cruel and unusual punishment and has, therefore, failed to preserve any such error. *See **Rhoades v. State***, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (waiver with regard to rights under the Texas Constitution); ***Curry v. State***, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (waiver with regard to rights under the United States Constitution); *see also* TEX. R. APP. P. 33.1; ***Mays v. State***, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) ("Preservation of error is a systemic requirement that a first-level appellate court should ordinarily review on its own motion[;] . . . it [is] incumbent upon the [c]ourt itself to take up error preservation as a threshold issue."). But even despite Appellant's failure to preserve error, we conclude that the sentence about which he complains does not constitute cruel and unusual punishment.

"The legislature is vested with the power to define crimes and prescribe penalties." ***Davis v. State***, 905 S.W.2d 655, 664 (Tex. App.—Texarkana 1995, pet. ref'd); *see also **Simmons v. State***, 944 S.W.2d 11, 15 (Tex. App.—Tyler 1996, pet. ref'd). Courts have repeatedly held that punishment which falls within the limits prescribed by a valid statue is not excessive, cruel, or unusual. *See **Harris v. State***, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); ***Jordan v. State***, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); ***Davis***, 905 S.W.2d at 664. In this case, Appellant was convicted of aggravated sexual assault of an elderly individual. *See* TEX. PENAL CODE ANN. §§ 22.021(a)(1)(A)(i), (a)(2)(C), (e); 22.04(c)(2). The life sentence of imprisonment imposed by the trial court was within both the statutory punishment range for a first-degree felony and the enhanced punishment range applicable due to Appellant's two prior sequential felony convictions. *See* TEX. PENAL CODE ANN. §§ 12.32(a),12.42(d), 22.021(e) (West 2019).

Therefore, Appellant's punishment is not prohibited as cruel, unusual, or excessive per se. *See* **Harris**, 656 S.W.2d at 486; **Jordan**, 495 S.W.2d at 952; **Davis**, 905 S.W.2d at 664.

Nonetheless, Appellant urges this Court to perform the three-part test originally set forth in **Solem v. Helm**, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). Under this test, the proportionality of a sentence is evaluated by considering (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. **Solem**, 463 U.S. at 292, 103 S. Ct. at 3011. Texas courts and the Fifth Circuit Court of Appeals have modified the application of the **Solem** test in light of the United States Supreme Court's decision in **Harmelin v. Michigan**, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) to require a threshold determination that the sentence is grossly disproportionate to the crime before addressing the remaining elements. *See, e.g.,* **McGruder v. Puckett**, 954 F.2d 313, 316 (5th Cir. 1992), *cert. denied*, 506 U.S. 849, 113 S. Ct. 146, 121 L. Ed. 2d 98 (1992); *see also* **Jackson v. State**, 989 S.W.2d 842, 845-46 (Tex. App.—Texarkana 1999, no pet.).

We are guided by the holding in **Rummel v. Estelle**, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980), in making the threshold determination of whether Appellant's sentence is grossly disproportionate to his crime. In **Rummel**, the Supreme Court addressed the proportionality claim of an appellant who received a mandatory life sentence under a prior version of the Texas habitual offender statute for a conviction of obtaining $120.75 by false pretenses. *See id.*, 445 U.S. at 266, 100 S. Ct. at 1135. In **Rummel**, the appellant received a life sentence because he had two prior felony convictions—one for fraudulent use of a credit card to obtain $80.00 worth of goods or services and the other for passing a forged check in the amount of $28.36. **Id.**, 445 U.S. at 266, 100 S. Ct. at 1134-35. After recognizing the legislative prerogative to classify offenses as felonies and considering the purpose of the habitual offender statute, the Supreme Court determined that the appellant's mandatory life sentence did not constitute cruel and unusual punishment. **Id.**, 445 U.S. at 285, 100 S. Ct. at 1145.

In the case at bar, Appellant's offense—aggravated sexual assault of an elderly individual—is more serious than the combination of offenses committed by the appellant in **Rummel**, and Appellant's life sentence is the same as the life sentence upheld in **Rummel**. Thus, it is reasonable to conclude that if the sentence in **Rummel** is not constitutionally disproportionate, neither is the sentence imposed upon Appellant. Because we do not conclude

9

that Appellant's sentence is disproportionate to his crime, we need not apply the remaining elements of the **Solem** test.  *See* **McGruder**, 954 F.2d at 316; **Jackson**, 989 S.W.2d at 845-46.

Finally, Appellant asserts that rights under Article I, Section 13 of the Texas Constitution should be interpreted more broadly than rights under the Eighth Amendment.  In support of this proposition, Appellant notes that Article I, Section 13 prohibits "cruel or unusual punishment" while the Eighth Amendment prohibits "cruel and unusual punishment."  The Court of Criminal Appeals has rejected the distinction Appellant proposes.  *See* **Cantu v. State**, 939 S.W.2d 627, 639 (Tex. Crim. App. 1997); *see also* **Lewis v. State**, 448 S.W.3d 138, 147 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).  Therefore, an analysis of this issue under the Texas Constitution is identical to an analysis under the United States Constitution.  *See* **id.**

As we have determined that Appellant failed to preserve this issue, his sentence is within the statutory range of punishment, and he failed to show that his sentence was constitutionally disproportionate, we overrule his third issue.

## COURT COSTS

In his fourth issue, Appellant contends that the assessed court costs erroneously included the local consolidated fee on conviction of a felony in the amount of $105.00, and the judgment must be modified.

### Standard of Review and Applicable Law

We review the assessment of court costs on appeal to determine if there is a basis for the cost, not to determine if there was sufficient evidence offered at trial to prove each cost, and traditional **Jackson v. Virginia** evidentiary-sufficiency principles do not apply.  **Johnson v. State**, 423 S.W.3d 385, 389-90 (Tex. Crim. App. 2014) (citing **Jackson**, 443 U.S. at 316, 99 S. Ct. at 2787).  Appellant need not have objected at trial to raise a claim challenging the bases of assessed costs on appeal.  **Id.** at 391.  When a trial court improperly includes amounts in assessed court costs, the proper appellate remedy is to reform the judgment to delete the improper fees.  **Cates v. State**, 402 S.W.3d 250, 252 (Tex. Crim. App. 2013).  Court costs may not be assessed against a criminal defendant for which a cost is not expressly provided by law.  *See* TEX. CODE CRIM. PROC. ANN. art. 103.002 (West 2018).

**Discussion**

The date of Appellant's charged offense is December 26, 2019. The Local Consolidated Fee on Conviction of Felony only applies to defendants who are convicted of offenses committed on or after January 1, 2020. TEX. LOC. GOV'T CODE ANN. § 134.101 (West 2021). Section 134.101 assesses an additional $105.00 fee for persons convicted of felonies. *Id.* § 134.101(a). That $105.00 fee is to be allocated to the following specific accounts and funds: the clerk of the court account, the county records management and preservation fund, the county jury fund, the courthouse security fund, the county and district court technology fund, and the county specialty court account. *Id.* § 134.101(b).

The bill of costs in Appellant's case includes the following costs as enumerated in Section 134.101: $40.00 for the clerk of the court, $4.00 for the county and district court technology fund, $1.00 for the county jury fund, $25.00 for the county records management and preservation, $25.00 for the county specialty court account, and $10.00 for the courthouse security fund. These fees total $105.00. Pursuant to the statute's effective date, Appellant is not obligated to pay the Local Consolidated Fee on Conviction of Felony. *See Hayes v. State*, No. 12-20-00222-CR, 2021 WL 1418400, at *2 (Tex. App.—Tyler April 14, 2021, no pet.) (mem. op., not designated for publication). Accordingly, we will modify the trial court's judgment, bill of costs, and Order to Withdraw Funds to delete these fees. *See Sturdivant v. State*, 445 S.W.3d 435, 443 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

We sustain Appellant's fourth issue.


**DISPOSITION**

Having sustained Appellant's fourth issue, we *modify* the trial court's judgment, bill of costs, and Order to Withdraw Funds to reflect that the Appellant's court costs are $396.50 by deleting the Local Consolidated Fee on Conviction of Felony. We *affirm* the judgment as *modified*.


GREG NEELEY
Justice

Opinion delivered July 29, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 29, 2022**

**NO. 12-21-00158-CR**

**STEVEN CHARLES HILL,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-0135-20)

---

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that the judgment, bill of costs, and Order to Withdraw Funds of the court below should be modified and as modified, affirmed.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment, bill of costs, and Order to Withdraw Funds of the court below be **modified** to reflect that the Appellant's court costs are $396.50 by deleting the Local Consolidated Fee on Conviction of Felony; in all other respects the judgment of the trial court is **affirmed**; and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*