**MODIFY and AFFIRM; Opinion Filed November 25, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01211-CR

### GLENN RAYSHON PIERCE, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F11-70146-J**

## MEMORANDUM OPINION
Before Justices Moseley, Lang, and Brown
Opinion by Justice Brown

Glenn Rayshon Pierce appeals his conviction for sexual assault. In three points of error, he contends the evidence is insufficient to show the complainant's lack of consent and that he suffered egregious harm from errors in the jury charge. The State asks in a cross-point of error for a modification of the trial court's judgment to reflect the correct offense for which appellant was convicted. We modify the judgment as requested and affirm the trial court's judgment as modified.

### Background

Appellant was charged by indictment with the offense of sexual assault. *See* TEX. PENAL CODE ANN. § 22.011(a)(1)(C), (b)(3) (West 2011). Appellant pleaded not guilty to the charge, and the case was tried to a jury.

The complainant, an adult male, was appellant's co-worker at a restaurant in Dallas. On January 3, 2011, the restaurant hosted a holiday party for the restaurant employees. The party started around 9:30 at night and lasted until about one o'clock in the morning. After the holiday party, a group of employees, including the complainant and appellant, went to a bar down the street from the restaurant. The group stayed at the bar for another hour, and then about six or seven people from the group went back to the complainant's house to "hang out, drink a little bit more, [and] wind down." By the time they reached the house, the complainant was "pretty drunk" and feeling the effects of drinking for four hours.

The complainant testified the group that went back to his house consisted of his core group of "good friends" from the restaurant. The complainant said he did not extend an invitation to appellant to come to his house because the complainant never hung out with appellant and appellant was not a part of his core group of friends. The complainant also said he did not want appellant at his house that night because "whenever [appellant] gets drunk, he gets a little aggressive and chatty." As an example of appellant's "aggressive chattiness," the complainant explained that earlier at the holiday party, the two were among a group smoking on a patio and got into a conversation during which appellant kept getting closer and closer until the complainant was pinned up against a railing with their faces just inches apart. The complainant testified he did not remember the content of the conversation, but in his written statement to the police, he stated that appellant propositioned him with oral sex. The complainant wrote that he said "no" repeatedly and indicated that this "encounter has happened numerous times at work and out socially when employees go out." He further testified that it was a "pretty common thing" for appellant to proposition him. The complainant said that he has told appellant "no, it's not gonna happen" because he is "not interested" in appellant that way. He stated that it was not possible on any of the occasions when appellant had propositioned him that appellant might have

been left with the impression that the complainant would be willing to engage in oral sex with appellant. The complainant also has seen appellant be "flirty" and "chatty" with other guys from the restaurant.

The complainant testified that the group at his house included a female co-worker with whom he had a sexual relationship. He said she was planning to spend the night, so when he went to bed at around 3:30 in the morning, he asked her to "come up and go to bed with [him]." Although she did not commit to joining him, the complainant believed she would do so. The complainant stayed awake for about ten to fifteen minutes to see if she "was going to show up" and eventually fell asleep. The complainant said he normally slept naked under a comforter.

Later, the complainant awoke because he felt somebody "between [his] legs, playing with [his] thighs." He testified he felt his legs being pushed back and then "started feeling somebody licking around [his] scrotum and penis." His initial thought was that his female co-worker showed up. The complainant said he was "totally asleep" when the licking started and thought this was a dream. He estimated that the licking continued for another thirty seconds to a minute, and as he was waking up and realizing what was going on, he started to receive oral sex, which went on "for a little bit." He admitted that he was aware of what was happening at the time and he did not try to stop the oral sex. He testified, however, that he was just being aroused from his sleep; his eyes were closed, and he was not alert. He discovered the person was not his female co-worker when he reached down and felt appellant's head. This was the first time the complainant realized appellant was at his house.

The complainant testified he kicked appellant off, rolled over, and starting yelling at appellant to leave. He said appellant pulled up his pants but was not trying to go out the door, asking the complainant "[a]re you sure you want me to leave" and saying, "you know you want me to stay." The complainant then grabbed appellant and escorted him down the stairs in an

effort to get him out the door. Because appellant would not leave, the complainant had to "grab [appellant] again and push him out the door." The complainant slammed the door shut. At this point, the others from the group woke up and asked what was going on. They also calmed the complainant down. The complainant testified he was "very, very angry" at what had happened and that he felt violated. He explained this was something that he never expected to happen to him. He also believed appellant took advantage of him and the situation.

When the complainant arrived at work the next morning, he immediately approached the general manager and told her what had happened with appellant. He communicated that he could no longer work with appellant. The general manager testified that the complainant was very upset and she said she would manage their schedules to accommodate the complainant's request. The manager testified she also spoke with appellant. She said appellant was defensive with her, wanting her to know that the complainant had been flirting with him, so what had happened "must have been okay" with the complainant. Appellant told her that the complainant "was fine with it until halfway through and then he wasn't okay with it," but he also acknowledged that the complainant "was not fully aware of what was going on." She testified that at the end of her conversation with appellant, she thought there was a point when appellant "possibly realized it wasn't the right thing to do."

The complainant contacted the police one or two days after the incident; he did not call the police right away because he did not know how to handle the situation. Officers then came to his house, interviewed him, took his comforter, and escorted him to the hospital to undergo a rape kit. An officer also gave the complainant a recording device and asked the complainant to see if he could get appellant to "say something" or admit to the offense on a telephone recording. The complainant testified he recorded a four or five minute conversation with appellant during which appellant apologized, said how badly he felt about it, and "how wrong it was." They also

–4–

discussed the fact that the complainant was asleep, to which appellant responded, "I know, I know. That's what I feel really bad about. I'm sorry." The recorded telephone call was played for the jury.

The jury found appellant guilty of the offense as charged and assessed punishment at two years in prison and a $1,000 fine. Based on the jury's recommendation, the court suspended imposition of appellant's sentence and placed appellant on community supervision for a period of five years. The court also ordered appellant to serve sixty days in the county jail as a condition of his community supervision.

**Sufficiency of the Evidence**

In his first point of error, appellant challenges the sufficiency of the evidence to support his conviction for sexual assault. Specifically, he contends no rational jury could have found beyond a reasonable doubt that the complainant was unconscious or physically unable to resist at the time of the event.

### *Legal Standards & Applicable Law*

In reviewing a challenge to the sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This standard recognizes the responsibility of the fact finder "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We defer to the fact finder's credibility and weight determinations because the trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See id.* at 326.

To prove beyond a reasonable doubt that appellant committed the offense of sexual assault as charged in this case, the State had to establish appellant intentionally and knowingly caused the complainant's sexual organ to contact and penetrate appellant's mouth without the complainant's consent and appellant knew the complainant was unconscious and physically unable to resist. TEX. PENAL CODE ANN. § 22.011(a)(1)(C), (b)(3). "Consent" is defined as "assent in fact, whether it is express or apparent." *Id.* § 1.07(a)(11) (West Supp. 2013). A sexual assault is without the consent of the other person under the statute "where assent in fact has not been given, and the actor knows that the victim's physical impairment is such that resistance is not reasonably to be expected." *Elliott v. State*, 858 S.W.2d 478, 485 (Tex. Crim. App. 1993).

*Analysis*

Appellant claims the complainant's testimony "effectively negated" the State's proof that appellant knew the complainant was unconscious and physically unable to resist because the complainant testified "unequivocally that he was able to resist and that he was conscious at the moment the indicted conduct began." He specifically relies on the complainant's testimony that he was "in the middle of waking up and really kind of realizing what's going on" when the oral sex began as proof that the complainant was awake before appellant initiated the indicted conduct. He also contends the complainant's testimony about kicking appellant off and yelling at him shows the complainant was "clearly physically able to resist." We disagree.

The record shows the complainant awoke to someone playing with his legs and licking him, and when appellant began to give him oral sex, he was "semi-conscious, just waking up." The complainant specifically testified he was "totally asleep" when he first felt the licking, and he was "not positive" how long the licking went on because he was "in the middle of waking up" and realizing what was happening. He thought it was a dream. The complainant explained that as he was being aroused from his sleep, his eyes were not open. Nor was he alert or aware of the

–6–

identity of the person giving him oral sex. He did not have a conversation with the person or hear a voice while this was going on. He also testified he could not resist appellant or physically push him off while he was sleeping. And it was not until the complainant touched appellant's head that he realized he was not dreaming. At that point, the complainant kicked appellant off and started yelling at him.

The jury also heard the complainant's testimony about the recorded telephone call during which appellant apologized to him and said he was embarrassed about his conduct. Appellant also said he felt "really bad" about the fact that the complainant was asleep at the time. The restaurant general manager also testified that appellant told her the complainant was not fully aware of what was going on because he was either "passed out" or asleep.

The record also shows that the night of the holiday party, there was more drinking than usual. A group went to a bar after the party to continue drinking and then went to the complainant's house to hang out and "drink a little bit more." The complainant admitted he was "pretty drunk" and feeling the effects of drinking when he arrived at his house. The complainant also testified he believed appellant tried to sleep with him because he was intoxicated that night and that appellant took advantage of the situation. *Cf. Contreras v. State*, No. 05-05-00570-CR, 2005 WL 3528782, at *4 (Tex. App.—Dallas Dec. 27, 2005, no pet.) (not designated for publication) ("Evidence that the victim of a sexual assault was unconscious due to voluntary intoxication is sufficient to prove lack of consent."). He had told appellant "no" repeatedly when appellant propositioned him at the holiday party and had turned down appellant's advances in the past. He testified it was not possible that appellant was left with the impression that the complainant was willing to engage in oral sex.

Reviewing the evidence in the light most favorable to the verdict, a rational jury could have concluded that the complainant's physical condition was such that any resistance was

unlikely, and therefore, the sexual contact was without the complainant's consent. *See Elliott*, 858 S.W.2d at 485; *see also Hughes v. State*, 194 S.W.3d 649, 654 (Tex. App.—Tyler 2006, no pet.) (concluding evidence sufficient to show lack of consent when, among other things, appellant began sexual abuse while victim was asleep); *Salazar v. State*, No. 05-05-01455-CR, 2006 WL 3291049, at *3 (Tex. App.—Dallas Nov. 14, 2006, pet. ref'd) (not designated for publication). We therefore conclude the evidence is legally sufficient to support appellant's conviction for sexual assault. We overrule appellant's first point of error.

## Jury Charge

Appellant asserts in his second and third points of error that he was egregiously harmed by errors in the jury charge. We address these points of error under the same standards.

### *Legal Standards*

The purpose of the jury charge is to instruct the jury on the law that applies to the case and to guide the jury in applying the law to the facts of the case. *See Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007); *see also* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007) (trial court shall give jury "a written charge distinctly setting forth the law applicable to the case"). When reviewing claims of jury-charge error, we first determine whether an error actually exists in the charge. *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). In making this determination, we examine the charge as a whole, considering the workable relationship between the abstract paragraphs of the charge—the instructions and definitions—and those applying the abstract law to the facts. *Caldwell v. State*, 971 S.W.2d 663, 666 (Tex. App.—Dallas 1998, pet. ref'd) (citing *Plaza v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled on other grounds*, *Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)).

If error exists and appellant objected to the error at trial, then we determine whether the error caused sufficient harm to require reversal. *Barrios*, 283 S.W.3d at 350. When, as here, there is no objection to the complained-of errors at trial, we will not reverse for jury-charge error unless the record shows appellant suffered egregious harm as a result of any error. *Id.* "Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011). We assess harm in light of the entire jury charge, the state of the evidence, including contested issues, the arguments of counsel, and any other relevant information revealed by the record as a whole. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006).

### *Definitions of "Intentionally" and "Knowingly"*

Appellant complains in his second point of error that the trial court reversibly erred by failing to limit the definitions of the conduct elements in the court's charge. The relevant portions of the charge read as follows:

> A person commits the offense of Sexual Assault if the person intentionally or knowingly causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor.
>
> . . .
>
> A person acts intentionally, or with intent, with respect to the nature of his conduct or with respect to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
>
> A person acts knowingly, or with knowledge, with respect to the nature of his conduct, or with respect to the circumstances surrounding his conduct when he is aware of the nature of this conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct, when he is aware that his conduct is reasonably certain to cause the result.
>
> . . .

Now, bearing in mind the foregoing instructions, if you find and believe from the evidence, beyond a reasonable doubt, that [appellant] . . . did unlawfully then and there intentionally or knowingly cause the sexual organ of . . . complainant, without the consent of the complainant, to contact or penetrate the mouth of [appellant], and the complainant had not consented and [appellant] knew the complainant was unconscious or physically unable to resist, then you will find [appellant] guilty of the offense of Sexual Assault, as charged in the indictment.

The above definitions track the statutory definitions of the culpable mental states in the penal code and encompass the three possible "conduct elements" that may be involved in an offense. *See* TEX. PENAL CODE ANN. § 6.03(a), (b) (West 2011); *see also McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989) (instructing that offenses may involve (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct); *Ash v. State*, 930 S.W.2d 192, 194 (Tex. App.—Dallas 1996, no pet.). When an offense is specifically delineated as a result-of-conduct or nature-of-conduct offense, the court should limit the statutory definitions of intentionally and knowingly to the culpable mental state required. *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994); *Murray v. State*, 804 S.W.2d 279, 281 (Tex. App.—Fort Worth 1991, pet. ref'd). But when an offense "is not clearly a result-oriented or a nature-of-the-conduct type offense, it is not error for the trial court to submit both in its definitions of knowingly and intentionally." *Hutson v. State*, No. 05-09-00033-CR, 2009 WL 3210704, at *5 (Tex. App.—Dallas Oct. 8, 2009, no pet.) (mem. op., not designated for publication).

Appellant argues that the offense of sexual assault is a nature-of-conduct offense and the trial court should have limited the definitions of the terms "intentionally" and "knowingly" to the nature of appellant's conduct. He contends this error resulted in egregious harm because the jury "would be confused to a degree that they either ignored the confusing aspects of the charge or they misapplied the conduct elements to the culpable mental states in reaching the verdict." He

also speculates that the jury "ignored the entire instruction" and convicted him without considering the law applicable to the case.

In this case, we need not decide whether the jury charge was erroneous because even assuming it was error for the charge to include the full statutory definitions of "intentionally" and "knowingly," we conclude appellant was not egregiously harmed. *See Barrios*, 283 S.W.3d at 350. Regardless of the way in which the offense of sexual assault is characterized, when the application paragraph of the charge correctly instructs the jury on the law applicable to the case, any error in the abstract instruction is not egregious. *Lara v. State*, Nos. 05-02-00611-CR, 05-02-00612-CR, 2003 WL 42418. at *2 (Tex. App.—Dallas Jan. 7, 2003, pet. ref'd) (not designated for publication) (citing *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999)); *see also Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995). Here, the definitions presented in the abstract portion of the charge were limited in the application paragraph to the alleged conduct; the court instructed the jury to convict appellant if it found appellant intentionally or knowingly sexually assaulted the complainant.

In addition, the evidence and arguments of counsel at trial show that this was not a case where appellant's intent or knowledge was a contested issue at trial. *See, e.g.*, *Saldiver v. State*, 783 S.W.2d 265, 268 (Tex. App.—Corpus Christi 1989, no pet.) ("Where no defense is presented which would directly affect an assessment of mental culpability, there is no harm in submitting erroneous definitions of 'intentionally' and 'knowingly.'"); *Reed v. State*, No. 10-12-00318-CR, 2013 WL 4767526, at *4 (Tex. App.—Waco Sept. 5, 2013, no pet. h.) (concluding appellant not egregiously harmed when focus at trial was on child victim's credibility and not whether he lacked the requisite culpable mental state to commit the offense); *Belmares v. State*, No. 03-11-00121-CR, 2011 WL 5865236, at *3 (Tex. App.—Austin Nov. 23, 2011, pet. ref'd) (mem. op., not designated for publication) (no egregious harm because defense was that

defendant denied the incident occurred and child's outcry was fabricated). Rather, the record shows the defensive issue at trial was whether the complainant consented to appellant's actions.

Based on our review of the record, we cannot conclude the alleged jury charge error affected the very basis of the case or a defensive theory at trial. Nor did the alleged error deprive appellant of a valuable right or make a case for conviction significantly more persuasive. *Taylor*, 332 S.W.3d at 490. Accordingly, we overrule appellant's second point of error.

### *Instruction on Reasonable Doubt*

In his third point of error, appellant contends the trial court erred by including a definition of reasonable doubt in the jury charge. He specifically complains about the following language: "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt." Appellant argues this language provides a definition of reasonable doubt in violation of *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000), which held that the better practice was to give no definition.

This Court, however, has previously considered this instruction and concluded it does not define "reasonable doubt." *See O'Canas v. State*, 140 S.W.3d 695, 702 (Tex. App.—Dallas 2003, pet. ref'd). Instead, we said the instruction "simply state[s] the legally correct proposition that the prosecution's burden is to establish proof beyond a *reasonable* doubt and not *all possible* doubt." *Id.*; *accord Bates v. State*, 164 S.W.3d 928, 931 (Tex. App.—Dallas 2005, no pet.); *Bratton v. State*, 156 S.W.3d 689, 696–97 (Tex. App.—Dallas 2005, pet. ref'd). The court of criminal appeals also has concluded a trial court does not abuse its discretion by giving this same instruction. *See Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010); *Woods v. State*, 152 S.W.3d 105, 115 (Tex. Crim. App. 2004). Thus, for the reasons stated in *O'Canas*, we reject appellant's argument and overrule his third point of error.

**Modification of the Judgment**

In a single cross-point, the State asks this Court to modify the trial court's written judgment to reflect the correct offense for which appellant was convicted. The judgment recites that appellant was convicted of "SEXUAL ASSAULT ANUS VAGINA," a second-degree felony under penal code section 22.011. *See* TEX. PENAL CODE ANN. § 22.011. Section 22.011, however, is titled "Sexual Assault," not "Sexual Assault Anus Vagina." *Id.* And the record shows that appellant was charged with and convicted of the offense of "sexual assault."

An appellate court has the power to modify incorrect judgments when the necessary data and information is available to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 27, 28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). We therefore sustain the State's cross-point and modify the judgment accordingly.

We affirm the trial court's judgment as modified.

/Ada Brown/
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

121211F.U05

–13–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

GLENN RAYSHON PIERCE, Appellant

No. 05-12-01211-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 3, Dallas County, Texas
Trial Court Cause No. F11-70146-J.
Opinion delivered by Justice Brown.
Justices Moseley and Lang participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The "Offense for which Defendant Convicted" is modified to read: "SEXUAL ASSAULT."

As modified, the judgment is **AFFIRMED**.

Judgment entered this 25th day of November, 2013.

/Ada Brown/

ADA BROWN
JUSTICE