**Opinion issued May 6, 2025**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-23-00317-CR**

———————————

**KYLE CHRISTIAN ROEBUCK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Case No. 1626314**

---

**MEMORANDUM OPINION**

Kyle Christian Roebuck appeals his conviction for sexual assault, for which he was sentenced to five years' imprisonment. *See* TEX. PENAL CODE § 22.011(a)(1)(A). On appeal, Roebuck contends that the evidence was insufficient to support his conviction. We affirm.

# Background

H.N. accused Roebuck of sexually assaulting her while she slept over at his stepdaughter's house. Roebuck was charged, and the case proceeded to trial.

## A. State's Witnesses

At trial, H.N.'s mother testified that in October 2018 her daughter, H.N., who was 18 years old at the time, attended a party at a friend's house. H.N.'s mother testified that she had given H.N. permission to drink alcohol at the party and spend the night at her friend's house. H.N.'s mother Facetimed with H.N. during the party at 6:00 p.m., and H.N. did not seem intoxicated. H.N.'s mother testified that she spoke with H.N. again about 9:00 p.m., and then went to bed.

Around 2:30 a.m., H.N.'s mother answered a call from H.N. H.N.'s mother testified that H.N. was hysterical asking her mother to pick her up. She stayed on the phone with her daughter and got in the car. H.N.'s mother first saw H.N. running barefoot, out of the neighborhood, toward the car. When H.N. got in the car, she was crying and very upset. H.N. could barely speak. After a few minutes, she was able to calm down enough to tell her mother that Roebuck had assaulted her by sticking his fingers inside of her vagina.

H.N.'s mother testified that they went home and called 911. Police responded, and after talking to the officer, H.N.'s mother took H.N. to the hospital

2

where she underwent a sexual assault examination. She then took her daughter home and put her to bed.

Officer J.P. Weaver with the La Porte Police Department testified that he responded to the 911 call. He found H.N. sitting on the couch upset and crying. Officer Weaver testified that H.N. did not show any signs of intoxication. He took statements from H.N. and her mother. He also collected the clothing H.N. had been wearing.

Officer Weaver left H.N.'s home and went to Roebuck's home where he interviewed Roebuck. According to Officer Weaver, Roebuck said that his stepdaughter had a party, and H.N. spent the night after the party was over. Officer Weaver testified that Roebuck said he woke up to the two girls vomiting. He helped them clean it up off the floor. Officer Weaver testified that Roebuck said he never touched H.N. inappropriately. Officer Weaver swabbed Roebuck's cheek and hands for DNA. He submitted the swabs to the police department lab. The court admitted Officer Weaver's body camera footage of his interview with Roebuck into evidence, and it was published to the jury.

H.N. testified that in October 2018 she attended a going-away party for her friend. Roebuck is her friend's stepfather. At the party, H.N. and her friend drank alcohol with their parents' permission. The party was mostly in the backyard and began about 6:00 p.m. H.N. said that Roebuck offered her beers and shots, and the

party attendees played drinking games. At about 7:30 p.m., H.N. started feeling intoxicated. She testified that when she talked to her mother around 9:00 p.m., she was intoxicated. H.N. testified that nothing inappropriate happened with Roebuck during the party.

Around midnight, H.N. went to sleep in her friend's room. Her friend was already passed out in the bed. H.N. testified that in the middle of the night, she felt Roebuck sit on the bed. She was laying on her stomach, and she felt him touching the inside and outside of her legs and her back in a sexual manner. She said she was confused and terrified. According to H.N., she was in and out of consciousness but kept saying "no" and "stop." Roebuck left the room. H.N. testified that she wanted to leave, but she did not have the strength because she was so drunk. Instead, she fell back asleep.

H.N. testified that later in the night, Roebuck came into the room a second time. H.N. saw the door open, noticed the light in the hallway. Roebuck sat on the bed and started rubbing H.N. up and down her leg on the outside of her sweatpants. He slowly put his hands inside her pants. He stuck one finger, then two fingers inside her vagina. She remembered that it was painful and hurt. Again, she testified that she did not consent to the touching and that she remembered saying "no." Again, H.N. testified that she was terrified and wanted to leave, but she did not have the strength. She passed out a second time when Roebuck left.

4

H.N. testified that Roebuck came back into the bedroom a third time. This time, she said he was more aggressive, going straight to her pants and putting his fingers inside of her vagina. Again, H.N. testified that she wanted to get him off her, but she did not have the strength. She testified that it was very painful and that she told him repeatedly to stop. When she tried to get up, Roebuck told her to lay back down. When he left the room, H.N. tried to leave.

H.N. testified that her friend slept next to her, and never woke up. H.N. testified that she blacked out and does not remember how she left the house, but she remembered running down the street barefoot in sweatpants and a tank top, calling her mom to come and get her because she had been sexually assaulted. H.N. testified that she was scared for her life as she ran down the street and that she scraped her toe while running away.

H.N. testified that her mother drove her home and called 911. H.N. spoke to the police at home and then went with her mother to the hospital. H.N. testified that she told a nurse what happened, and the nurse performed a sexual assault ("SANE") examination and took swabs of various parts of her body, including inside of her vagina. As part of the examination, the medical staff had to remove a tampon that had been pushed far up inside her vagina. H.N. testified that it took five minutes and was very painful. According to H.N., she put the tampon in at her friend's house before the party started and did not touch it again.

When the examination was over, H.N.'s mother took her home, and H.N. went to sleep. H.N. testified that she later went to the police department to give the same statement about what had happened to her. She also talked to the district attorney's office.

The nurse who conducted the sexual assault examination testified at trial. The court admitted the medical records from the examination into evidence, and they were published to the jury. The examination report included that H.N. had told the nurse during the exam that her best friend's stepdad "came in when [H.N.] was trying to go to sleep and used two fingers to finger [her] three separate times." The nurse described the examination process for the jury. She testified that the emergency physician found and removed a tampon inside H.N.'s vagina.

The assistant manager for training at the Forensic Genetics Laboratory of the Harris County Institute of Forensic Sciences testified as to the DNA evidence in the case. He stated that DNA analysis found both H.N.'s and Roebuck's DNA profiles on a sample taken from H.N.'s tampon string. His analysis concluded that "the DNA mixture is approximately 6 million times more likely to have originated from [H.N.] and Kyle Roebuck than to have originated from [H.N.] and another individual." He testified that H.N.'s DNA was also found on a swab from Roebuck's right hand. A third unidentified person's DNA was also found on the swab from Roebuck's hand.

**B.      Roebuck's witnesses**

Roebuck's wife testified that her daughter was friends with H.N. She described having a party for her daughter in celebration of her daughter joining the military, and that H.N. was a guest at the party. Roebuck's wife testified that she had called H.N.'s mother and received her permission for H.N. to drink at the party, if she spent the night. She testified that the party guests, including her daughter and H.N., played drinking games that night and became intoxicated. Roebuck's wife went to bed after 10:30 p.m. because she was intoxicated. She found trash bags with vomit-stained towels in them the next day and learned that her daughter and H.N. had thrown up.

Roebuck's stepdaughter, H.N.'s friend, testified to drinking to intoxication at the party. She stated that she and H.N. went to the bathroom together during the party, and H.N. changed her tampon during that bathroom trip. The bathroom had a basket of feminine hygiene supplies, including tampons.

Roebuck's stepdaughter testified that she threw up multiple times that night. First, she remembered throwing up on her bedroom floor because she was too intoxicated to walk to the bathroom. Roebuck carried her to the shower before helping other family members clean up the vomit. She vomited again in the shower before going back to bed.

Roebuck's stepdaughter testified that H.N. threw up multiple times, including on the bedroom floor. Roebuck helped H.N. stand up on her feet, and an aunt walked her to the bathroom and back to bed. Roebuck cleaned up the vomit. Roebuck's stepdaughter testified that she woke up later to find H.N. in the closet in the fetal position. Roebuck and an aunt came in to check on H.N. H.N. went to the bathroom, and Roebuck's stepdaughter fell back asleep. Roebuck's stepdaughter woke up later when the police were in her house.

A family friend, whom Roebuck's stepdaughter referred to as an aunt, testified at trial. She stated that she came into town to help with the party and to support Roebuck's wife. She testified that during the party, H.N. left and sat in the car with another guest. When H.N. returned, she smelled like marijuana. She testified that H.N. became intoxicated during the party. Later in the night, the family friend helped Roebuck's stepdaughter to the bathroom after the stepdaughter had vomited. Roebuck cleaned up the vomit.

Later, Roebuck and the family friend went to check on his stepdaughter and H.N. H.N. was sitting on the floor with vomit on her shirt. There was also vomit on the floor. The stepdaughter was in the bed covered up. Roebuck helped H.N. stand up while the family friend cleaned up the floor. The family friend then helped H.N. to the toilet and waited outside the bathroom. She then helped H.N. change into one of her friend's tank tops and get back into bed. Later in the night, she found

8

H.N. in the closet. She confronted her and assisted her to the bathroom. H.N. then returned to the bedroom and got in bed. The family friend spent the rest of the evening on the couch.

The family friend testified that after 1:00 a.m., H.N. came into the living room and said that she wanted to leave. The family friend gave H.N. her cell phone. After using the phone, H.N. told the family friend that her mother was on the way and went to the front door.

## C.     Verdict and Sentencing

The jury found Roebuck guilty of sexual assault, and the trial court sentenced him to 11 years' imprisonment. Roebuck moved for a new trial as to the punishment phase only, based on ineffective assistance of counsel. His motion was granted, and he received a second trial on punishment, this time before a jury, in April 2023. The second jury sentenced him to five years' imprisonment. This appeal concerns only the underlying conviction decided by the first jury.

## Sufficiency of the Evidence

In his sole issue, Roebuck argues that the evidence is legally insufficient to support his conviction.

## A.     Standard of Review

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323

9

S.W.3d 893, 912 (Tex. Crim. App. 2010). Under the *Jackson* standard, "we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (internal quotation and citation omitted).

In conducting our review, we defer to the factfinder to "fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (quoting *Jackson*, 443 U.S. at 318–19). The jury, as the sole judge of the facts and credibility of the witnesses, may choose to believe or disbelieve any witness or portion of their testimony. *Metcalf v. State*, 597 S.W.3d 847, 855 ((Tex. Crim. App. 2020). We presume that the jury resolved any conflicts in favor of the verdict and defer to that determination. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012).

"The key question is whether the evidence presented actually supports a conclusion that the defendant committed the crime that was charged." *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (internal quotations omitted). And our role on appeal is "restricted to guarding against the rare occurrence when a fact finder does not act rationally." *Id.* (internal quotations omitted). Further, in our review, "circumstantial evidence is as probative as direct evidence in

establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Evidence is sufficient if the inferences necessary to establish guilt are reasonable based upon the cumulative force of all evidence considered in the light most favorable to the verdict. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

**B.    Governing Law**

A person commits the offense of sexual assault if the person intentionally or knowingly causes the penetration of the sexual organ of another person by any means without that person's consent. TEX. PENAL CODE § 22.011(a)(1)(A). A sexual assault is without consent of the other person if the actor "compels the other person to submit or participate by the use of physical force, violence, or coercion;" or "the other person has not consented and the actor knows the other person is unconscious or physically unable to resist." *Id.* § 22.011(b)(1), (3).

**C.    Analysis**

Roebuck contends that the evidence is legally insufficient because no rational jury could have believed H.N.'s testimony. He argues that, instead, a rational jury should have believed his witnesses' testimony. Finally, he questions the DNA results showing his DNA on H.N.'s tampon. He argues that his

interactions during the party could have resulted in his DNA being found on the tampon.

The jury heard H.N.'s testimony of the assault and heard corroborating testimony from three additional witnesses. H.N. described going to her friend's house for a party, drinking too much, and falling asleep in her friend's bedroom. H.N. testified that Roebuck came into the room three times during the night. Each time, Roebuck's unwanted advances escalated from groping her leg, to inserting his finger into her vagina, to inserting two fingers into her vagina. H.N. testified that she could see it was Roebuck who assaulted her because the light was on in the closet. She also heard Roebuck's voice.

H.N. testified that she was drunk and that she told Roebuck to stop multiple times. She testified that she lacked the strength to stop him because of her intoxication. Once physically able to flee, she called her mother to pick her up. Her mother called 911, and after speaking to police, H.N. went to the hospital for a SANE examination. H.N. testified that she spoke with police a second time, giving them the same explanation of the sexual assault. She also repeated her account when she met with the Harris County District Attorney's office.

H.N.'s mother testified as to what H.N. told her that night, and H.N.'s mother's account was similar to H.N.'s testimony. The responding police officer testified as to H.N.'s account of the sexual assault, and his testimony was

12

consistent with H.N.'s testimony. The SANE nurse who examined H.N. also testified about what H.N. told her of the sexual assault and her account was likewise consistent.

Roebuck argues that the jury should have believed his witnesses instead of H.N., but their testimony did not contradict H.N.'s account of the assault. Roebuck's wife testified that she was asleep before the assaults occurred. Roebuck's family friend told the jury she was in the living room for much of the night. She helped H.N. and her friend when they vomited. She testified that about 1:00 a.m., she gave H.N. her phone. Roebuck's stepdaughter testified that she fell asleep in the same room as H.N. and that her closet light was on. Roebuck's witnesses thus did not give testimony contradicting H.N.'s account of the assault.[1] While Roebuck told police he did not sexually assault H.N., the jury, as the exclusive finder of fact, was at liberty to evaluate the evidence and resolve any conflicts, and we defer to that determination. *See Edward v. State*, 635 S.W.3d 649, 656 (Tex. Crim. App. 2021) ("When faced with conflicts in the evidence, a reviewing court shall presume that the fact finder resolved those conflicts in favor of the verdict and defer to that determination.").

---

[1]  Roebuck's stepdaughter and H.N. each testified about their relationship and communication in the days after the sexual assault. This testimony likewise did not contradict H.N.'s account of the assault. To the extent Roebuck argues that H.N.'s communication with his family after the assault affects her credibility, the jury was the sole judge of the credibility of the witnesses and the weight of the evidence. *See Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020).

13

Finally, Roebuck argues that his DNA could have been on the tampon on account of "innocent physical interactions" with H.N. throughout the party, such as drinking from the same bottle during the party or his helping her clean up after vomiting. Even if the jury believed some of Roebuck's DNA contacted H.N. due to these interactions, this argument does not explain how his DNA reached the tampon found inside H.N. Similarly, whether H.N. brought the tampon from home or used one found in the bathroom at Roebuck's house is irrelevant; Roebuck's DNA was found on the tampon that was inside H.N.

Roebuck also argues that the jury should have doubted the credibility of the DNA analyst's conclusions because an unknown third person's DNA was found on the swab from Roebuck's hands. But this conclusion does not call into question the results from analysis of the tampon string, which contained only H.N.'s and Roebuck's DNA. Moreover, the fact that another person's DNA was found on Roebuck's hand does not call into question the analyst's conclusions.[2] The jury could reasonably infer that after a party, Roebuck might have DNA from multiple people on his hands.

We further note that a complainant's testimony is sufficient to support a conviction for sexual assault. TEX. CODE CRIM. PROC. art. 38.07; *see also Green v.*

---

[2] The DNA analyst also explained that the only reason the third party was unidentified was because the only reference samples taken in the case were from H.N. and Roebuck. There was no other DNA reference profile to identify a third person.

14

*State*, 607 S.W.3d 147, 153 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("A victim's uncorroborated testimony, standing alone, is sufficient to support a sexual assault conviction."). The jury could have reasonably believed H.N.'s testimony, which was corroborated by testimony from the police officer, her mother, and the SANE nurse. The evidence that Roebuck's DNA was found on a tampon recovered from inside H.N. also corroborates H.N.'s testimony.

As to H.N.'s intoxication, evidence that the complainant was unconscious or nearly unconscious due to voluntary intoxication is sufficient to prove lack of consent. *Wilson v. State*, 473 S.W.3d 889, 899 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). Intoxication bears on the credibility of the witness. *Cain v. State*, 958 S.W.2d 404, 409 (Tex. Crim. App. 1997) ("[T]he victim's intoxication bears on credibility, which is a matter reserved for the jury.") The jury could weigh the credibility of each witness's testimony, and we defer to that credibility determination. *See Edward*, 635 S.W.3d at 656.

Viewing the evidence in the light most favorable to the verdict, we conclude that a reasonable factfinder could have concluded beyond a reasonable doubt that Roebuck was guilty of sexual assault.

We overrule Roebuck's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Susanna Dokupil
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

Do not publish.  TEX. R. APP. P. 47.2(b).